# EXHIBIT A



## IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

TERESA CASTEEL,

      Plaintiff,

vs.

MONTEREAU, INC.,

      Defendant.

Case No. CJ-2020 03400 Doug Drummond

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED

DISTRICT COURT
F I L E D
NOV - 4 2020
DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

### PETITION

**COMES NOW** the Plaintiff, Teresa Casteel, an individual, ("Plaintiff") and for her claims for relief against Montereau, Inc. ("Montereau"), alleges and states as follows:

### PARTIES

1. Plaintiff is a resident of Tulsa County, State of Oklahoma.

2. Montereau, Inc. is a not for profit corporation incorporated in the state of Oklahoma with its principal place of business located at 6800 South Granite Avenue, Tulsa, Oklahoma, within the jurisdiction of this Court.

### FACTS COMMON TO ALL COUNTS

3. Plaintiff was employed by Montereau as a Lead Housekeeper.

4. Plaintiff's primary job was to coordinate staff to make sure that housing units were cleaned and ready when new residents arrived.

5. Plaintiff was hired on or about May 19, 2015.

6. Starting in June 2015, Plaintiff's co-worker, Fred Holmes, began making unwanted verbal gestures toward Plaintiff and would look her up and down as she walked by him.

7. Fred Holmes would often try to flirt with Plaintiff when he would take out the trash in Plaintiff's office, so Plaintiff told Mr. Holmes not to come into her office anymore because of his behavior.

8. In November 2016, Fred Holmes came into Plaintiff's office to pick up her trash. She told him not to, but Mr. Holmes reached down and grabbed the trash container anyway. As Mr. Holmes reached for Plaintiff's trash, he touched her leg. Plaintiff chose not to say anything and did not report the incident, despite the fact Mr. Holmes made her feel uncomfortable and afraid.

9. On December 5, 2016, Plaintiff emailed her direct supervisor, Bobby Blose, Director of Plant Operations at Montereau, about her job performance. She specifically asked if there was anything about her performance that was bothering him, to which Mr. Blose replied, "Im[sic] good. All is well."

10. On February 25, 2017, Fred Holmes stood outside Plaintiff's office door and said to another co-worker loudly enough for Plaintiff to hear: "I should ask her to spread her big, fat, white a** cheeks and let me kiss it." Earlier that day, Plaintiff had asked Mr. Holmes to perform a task he apparently did not want to do, so Plaintiff imagined this was what led to his behavior. Mr. Holmes's lewd sexual comments made Plaintiff again feel uncomfortable and afraid.

11. The task Plaintiff asked Mr. Holmes and another co-worker, John Moss, to perform earlier was to help her find a table for a VIP hospice patient. Both men stated that they didn't know where to look or what to do. Later, Plaintiff heard Mr. Holmes make a lewd comment to Mr. Moss about her. Immediately thereafter, Mr. Holmes came up to Plaintiff and told her he was using hand cream that "made him act funny."

12. At the next available opportunity, on or about February 27, 2017, Plaintiff reported Fred Holmes's behavior to her direct supervisor, Bobby Blose. Mr. Blose told Plaintiff to report the incident to the Human Resources Department but did not seem interested in knowing what had happened. Further, Mr. Blose did not take any corrective action or make a written record of Plaintiff's complaint.

13. Plaintiff verbally reported the incident to Laura Hawkins at Human Resources on or about February 27, 2017. However, to date, no action was ever taken to correct the situation or to ensure Mr. Holmes no longer had direct contact with her. To Plaintiff's knowledge, the Human Resources Department did not make a written complaint of the reported incident.

14. On March 7, 2017, Bobby Blose told Plaintiff that she had "never lived up to [her] responsibilities at work." This comment was made in retaliation for the complaint she filed at Human Resources against Fred Holmes. Prior to this statement, Mr. Blose had not made any complaints about Plaintiff's work performance and had told her she was doing a good job.

15. On March 10, 2017, Fred Holmes followed Plaintiff to her car. When Plaintiff began unlocking her car door, she noticed Mr. Holmes was standing next to her trunk. He said something to Plaintiff which she does not recall. Plaintiff said nothing as she got into her car, as she felt intimidated and afraid of Mr. Holmes. She did not report this incident, after being blown off earlier by her supervisor, Bobby Blose.

16. On March 15, 2017, Bobby Blose wrote up a negative disciplinary report and threatened to fire Plaintiff if she did not improve after a sixty (60) day probationary period. The report contained false, inaccurate, and totally fabricated information. The report was created because she made the complaint against Fred Holmes.

17. On March 17, 2017, while Plaintiff was in the bathroom, she overheard Bobby Blose say to a housekeeper that he was "tired of" her and that he was "going to get rid of" her.

18. Plaintiff's co-workers began to have a negative, hostile attitude towards her and would complain when she requested them to perform their work duties. The attitude of Plaintiff's co-workers began to make her job increasingly more difficult.

19. The effect of the continued actions of Fred Holmes, the hostile work environment, the indifference of Plaintiff's immediate supervisor and the Human Resources Department, and the retaliation that occurred thereafter caused Plaintiff's health to suffer. The extreme stress and anxiety she suffered

due to her work circumstances caused chest pain, diverticulitis, sleeplessness and depression.

20. On April 14, 2017, Fred Holmes stood outside Plaintiff's office door, staring at her. This incident was not reported by Plaintiff, as she had lost confidence in Montereau protecting her rights.

21. In May 2017, Plaintiff filed a complaint with the EEOC.

22. On July 20, 2017, the Health Center Team at Montereau received an Overall 5 Star Quality Rating. Plaintiff was informed it had been a "long time" since the Team had received such a high rating.

23. In early January 2018, Immigration and Customs Enforcement "I.C.E.", an agency within the Department of Homeland Security, arrived at Montereau and detained some employees. Bobby Blose told some of the remaining Hispanic employees that Plaintiff had reported their undocumented co-workers to I.C.E. Plaintiff did no such thing.

24. On January 10, 2018, Plaintiff's car tire was slashed in the parking lot. When Plaintiff requested to see the video surveillance from that day, Bobby Blose showed her footage from the incorrect day. Plaintiff was persistent in her requests to see footage from the correct day. Bobby Blose refused to show it to her and fired her.

25. Since losing her position at Montereau, despite continued efforts, Plaintiff has been unable to find work.

### Count 1: Intentional or Reckless Permitting of a Hostile Work Environment Resulting in Severe Emotional Distress

1. The foregoing paragraphs are incorporated by reference as if set forth verbatim.

2. Defendants' actions as outlined above and permitted by Defendant were outrageous and beyond all bounds of decency.

3. Defendant intentionally permitted a hostile work environment against Plaintiff to persist in order to induce her to quit.

4. These actions permitted by Defendant were the proximate cause of Plaintiff's severe emotional distress and termination.

**WHEREFORE**, premises considered, Plaintiff prays this Court grant relief in the form of judgment against Defendant for actual and compensatory damages, punitive damages, award attorney fees and costs, accruing interest and any further relief this Court deems equitable and just.

**JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

SALMON LAW FIRM,

s/ **CALEB M. SALMON**

---

Caleb M. Salmon, OBA No. 32272
SALMON LAW FIRM
5800 E. Skelly Dr., Suite 575
Tulsa, Oklahoma 74135
Telephone: (918) 524-9500
Facsimile: (918) 524-9555
*Attorney for Plaintiff*